ALONSO HERMANOS ET AL., Plaintiffs and Appellees, *v.*
JOSÉ MATOS, Defendant and Appellant.*

No. 5793.   Argued December 21, 1932.—Decided April 6, 1934.
Rehearing denied June 8, 1934.

---

* NOTE.—This decision was affirmed by the Supreme Court of the United States on certiorari to the Circuit Court of Appeals for the First Circuit. See *Matos* v. *Alonso Hermanos,* 300 U.S. 429, reversing 81 F. (2d) 930.

*H. Torres Solá* for appellant.   *C. Iriarte* for appellees.

Mr. Justice Wolf delivered the opinion of the court.

On the 1st of March 1929, the parties in this case made an agreement whereby a sale of cattle was negotiated. The cattle were sold for the lump sum of $18,000. The purchaser, Alonso Hermanos, an agricultural partnership, paid $3,000 in cash to José Matos, the vendor, transferred to him a piece of property worth $5,000, and agreed to pay the balance in two years, to mature on the 1st of March 1931. To secure the balance of the purchase price remaining unpaid, Alonso Hermanos executed a mortgage to José Matos, the deed for which was duly recorded.

On December 12, 1929, the plaintiffs brought suit for the return of what they had paid and the extinction of their obligation to pay, alleging that the contract was null, void, and inexistent, inasmuch as at the time of the supposed sale the herd of cattle were affected by consumption, occult and not apparent. The specific words of the complaint in this connection were:

"(d) That on the 1st of March 1929, when the sale of the above-mentioned cattle took place, the latter were apparently in good condition and that no notice was then given to the contrary by the defendant to the plaintiffs, who having no knowledge of, or experience in veterinary matters, were unable to discover at sight whether said cattle were suffering from any hidden disease.

"(e) That long before the 1st of March 1929, according to plaintiffs' information and belief, formed subsequently to said date, the

herd of cattle sold by José Matos to Alonso Hermanos, were suffering from tuberculosis, which is a contagious disease, and that, on information and belief, from the 18th of March to December 6, 1929, out of the one hundred and twenty-two (122) head of cattle which constituted the aforesaid herd, forty-three have died of said disease, to wit:

"※      ※      ※      ※      ※      ※      ※

"And, further, after tuberculine, which is a test to determine the presence of tuberculosis in cattle, was applied by an official of the Health Department of Puerto Rico, it was found that twenty-nine head more of the herd sold to Alonso Hermanos by José Matos were affected also by tuberculosis, contracted while the animals were in the possession of the defendant, according to plaintiffs' information and belief.

"(f) That the plaintiffs stand ready and willing to return to the defendant (and they hereby offer to do so) all of the surviving cattle which are a part of the entire herd sold to plaintiffs as above alleged on March 1, 1929, by Mr. Matos."

The defendant demurred, among other reasons, because the action had prescribed. The period of prescription on which the defendant relied is that specified in section 1399 of the Civil Code (Comp. of 1911, section 4505) as follows:

"The redhibitory action, based on the vices or defects of animals, must be instituted within forty days, counted from their delivery to the vendee, unless, by reason of the customs in each locality, longer or shorter periods are established.

"This action in the sale of animals may only be enforced with regard to the vices and defects of the same, determined by law or by local customs."

The demurrer was overruled, and the defendant answered. He set up that at the time of the sale the cattle had no disease, occult or apparent. He denied that the forty-three cattle that were alleged to have died were affected by tuberculosis at the time of the sale; and alleged in effect that if they died it was by reason of the lack of care on the part of the plaintiffs and of the place or places where the latter had put the cattle.

The complaint did not set up a lack of good faith on the part of the defendant.

It may be said from a reading of the complaint and the brief of the appellees that the cause of action here is based exclusively on the idea that the sale was completely null and void and inexistent because a great part of the cattle was affected by tuberculosis at the time of the sale.

The plaintiffs insist that the action is based on section 1397 of the Civil Code, which reads as follows:

"Animals and cattle suffering from contagious diseases shall not be the object of a contract of sale. Any contract made with regard to the same shall be void.

"A contract of sale of cattle and animals shall also be void, when the use or service for which they are acquired being stated, they are found to be useless therefor."

The court found that the sale took place on the first of March 1929; that the cattle were taken away in two sections; that the cows had to walk ten or twelve kilometers to the farm of the plaintiffs; that the cattle were intended for dairy purposes; that on the day of the sale it was noticed that various cows were coughing, breathed with difficulty, had diarrhea, and the milk coagulated in the udder; that within three weeks the cattle began to die, until 72 died, of which number 29 were ordered to be killed by the sanitary authorities, some of them because they were affected by tuberculosis and others because they were suspected of having that disease; that the cattle began to die on the eighteenth of March; that in July, Varas, a veterinary surgeon, came to examine a dog and in passing also examined the cattle; that he performed an autopsy on one cow and found that it had tuberculosis; that then the plaintiffs went to see the defendant, explained the situation to him and he said that he did not have anything to do with it; that the cows, so the court found, were bought for the purposes of a dairy and Matos himself bought milk from the plaintiffs for some time after the sale.

With regard to the testimony of the experts the court said:

"The veterinary experts testified as to the condition in which they found the cows and as to the fact that they were suffering from pulmonary tuberculosis. The testimony of the experts is curious, for while some of them stated that the incubation period lasts months and even years the more reliable consensus of opinion is that that period may last from two weeks to several months, and that it is very difficult to determine whether the tubercular affliction in the cattle is recent or not."

The court said, without specification of how many, that the animals the object of this suit died of a contagious disease such as is pulmonary tuberculosis; that it was a settled fact that the appearance of the animal does not necessarily reveal its condition of health; in other words, that a cow could be apparently sound and produce milk normally and nevertheless be tuberculous; that to the cattle the object of this suit tuberculine was applied, and the result was a positive reaction in a certain number, which had to be killed; that the property to which the cows were taken was in fair hygienic conditions and had sufficient water; that the autopsy made on some of the cows showed that a chronic cavernous condition existed, which indicated that the cattle had been sick for a long time.

Then the court places the issues in this case as follows:

"The parties lay great stress upon the question of law involved, and the court really believes that the determination of such question would settle this controversy since the evidence supports the allegations of the complaint, namely, that at the time of the transaction part of the cattle sold was suffering from a contagious disease. Said questions of law may be stated thus: Is the action exercised herein one of redhibition or one for nullity of contract?"

The court proceeds to discuss the issues and among other things decides that the contract was null, void, and inexistent; that the parties knew that the cattle were to be used in a dairy; that is to say, the court was of the opinion that the sale should be considered as an entirety, inasmuch as the cows were to be used for a dairy, and this fact was known to the defendant. The court therefore held that the sale

was void as an entirety. The use to which the cattle was to be put was not alleged in the complaint to have been specified in the contract, the condition set out in the second paragraph of section 1397.

The court thought that the prescriptive period of forty days was not necessarily to be applied in Puerto Rico and that in any event the contract was entirely void because it lacked an adequate consideration. The court based its decision on section 1397, *supra*.

For convenience, we shall first discuss the final issues in the case, disregarding, for the moment, the demurrer.

Section 1397 of the Civil Code, on which the plaintiffs rely, is placed in a chapter the title of which is as follows:

"Warranty against hidden defects of or burdens on the thing sold."

A better translation of the Spanish would be:

"Warranty against hidden defects or encumbrances of the thing sold."

The appellant argues that the title shows that all sections within it refer to warranties, that an action for a breach of warranty in cases of animals must be exercised within forty days, as provided in section 1399, *supra;* and that the action herein exercised is one of redhibition.

On the contrary, the appellees maintain that section 1397 of the Civil Code is absolute in its terms and that the accident of its being placed under a chapter entitled as we have seen could not affect such an absolute situation; that the theory of the said section, as explained by the commentators, is to make a contract totally inexistent, prescription not being, therefore, applicable.

Section 1397, *supra,* says that animals suffering from contagious diseases shall not be the object of a contract of sale. This is the written law in Puerto Rico and it was equally the law of Spain. Section 1494 of the Spanish Civil Code is exactly the same as ours. There is no doubt that

tuberculosis would be one of the contagious diseases referred to in section 1397.

Tuberculosis in cattle may be communicated to human beings through the milk and by other means unnecessary to enumerate. The disease is similar in its effects to tuberculosis in man but the contagion that is transmitted by cattle to human beings does not exhaust the realm of tuberculosis that may be contracted. The evidence of the experts in this case tended to show that a cow may be affected by tuberculosis and continue to yield good milk; that it is only after the disease reaches a certain stage that the milk itself is a bearer of disease.

In 1902 the Civil Code of Puerto Rico was adopted. The mind of the Legislature was not specifically fixed on the disease of bovine tuberculosis. If we investigate the history of the legislation in regard to the vices for which the vendor gave a warranty, we shall find that universally vices in animals giving the purchaser a cause of action were characterized as redhibitory. This was true from the time of the aediles in Rome. The Latin word *redhibitio* means a return of the thing sold, or sometimes of part of the thing sold, with a right to obtain all or a part of the price paid. A vice in an animal causing the annulment or the rescission of the sale has always been considered as redhibitory, at least up to the enactment of the Civil Code of Spain of 1889, and hence of that of Puerto Rico. It may be noted that in the proposed bill (*proyecto*) of 1851 there were certain redhibitory vices pointed out, and tuberculosis in cattle was one of them. The French legislation follows the same course.

Louisiana has written a definition into its code as follows:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." C. C. art. 2520. (*Henderson* v. *Leona Rice Milling Co.*, 160 La. 597, 107 So. 459.)

The plaintiffs themselves in bringing this action offered to return all the cows that remained in their possession, because in their opinion the whole contract was null, void, and inexistent by reason of the presence of tuberculosis and of the fact that the cows were intended for a dairy. In other words, the learned counsel for the appellees realized that in order to have a possibility of success in their suit they were bound to return or offer to return the animals, the subject of the contract, whether diseased or not. Whatever else it may be characterized or whatever else may be the effect of section 1397, the action for the nullity mentioned therein is necessarily a redhibitory action. If the vendor refuses to return the price and receive back the animals, the purchaser has to bring an action, and that action is a redhibitory one, whether the thing attempted to be sold can or can not be the subject of a contract by reason of section 1397. The idea of the plaintiffs here was that, as a great part of the animals were diseased, the whole contract was void.

Some of the commentators on the Civil Code apparently say, especially when discussing the question of prescription, that section 1397 makes the contract absolutely inexistent, implying, therefore, that no prescription runs. 10 Manresa (4th ed.) 229; 24 Laurent 109; 1 Gasca, *infra*. Other commentators do not agree with this interpretation. The most poignant commentary is made by Scaevola at page 668 of volume 23 of his Commentaries on the Civil Code, as follows:

"We repeat that no contract can be annulled by reason of redhibitory defects, and even less because of those mentioned in article 1494 than by reason of those set out in article 1484. We add that if article 1484 in fact attempted to establish the nullity, it is in open conflict with article 1494 and with those which regulate the consent in general.

"We prefer, therefore, to think that 'Homer slept'; that nothing else was intended than to apply specifically to the sale of animals or cattle what was already provided for all kinds of alienations in general; that, in so doing an uncalled for repetition was incurred; and

that, as it generally happens in such cases, in saying what was not needed it was ended by saying what should not have been said. Let it be understood, then, that when the contract we are discussing is declared to be void it has been intended to characterize it as 'voidable' (*rescindible*) subject to a redhibitory action as in the case of any other contract where the thing sold lacks fitness.''

Let us take an example particularly germane to this case. A sale of a cow is made and both parties are acting in good faith. Nevertheless, after a while, either by his own observations or the intervention of the health authorities the buyer learns that the cow has incipient tuberculosis. However, the cow is exceptionally good and the purchaser desires to retain it. Under all the authorities he could not retain the cow and get back the price. To recover the price he must return the animal. It is entirely at his election to retain the cow.

No different rule could apply where cattle are sold in bulk. Both parties have entered into a discussion as to whether the sale in bulk (*precio alzado*) could affect the questions before us. The appellees maintain that as a great part of the cattle was affected, the whole sale was void or voidable. The appellant insists that section 1397 only applies at best to the cattle actually diseased, and that each animal must be considered separately.

In Louisiana it has been said that a warranty is of the nature of the contract of sale; that is, the law implies it, if a contrary agreement be not made; but that it is not essential to such a contract; that the vendor may stipulate he will not warrant at all, or he may covenant that his warranty shall be restricted, or he may contract that his vendee shall accept the warranty of a third person. *Strawbridge* v. *Warfield*, 4 La. 20. A similar ruling was made in *Bayon* v. *Vavasseur*, 10 Mart. (O. S.) 61, 66.

This brings us to another point. The appellees attempt to say that section 1397 stands for itself and that it makes the contract absolutely nonexistent. Nevertheless, the said section is contained in a chapter which speaks of warranty for the hidden defects or encumbrances of the thing sold.

We, therefore, come to the conclusion with Scaevola that necessarily the legislator meant to say that the contract could be rescinded or annulled as in other redhibitory actions; and that section 1397 does not exclude the transaction made in this case from the field of warranties.

Likewise, the parties by stipulation may make redhibitory those defects which are not so ordinarily. This has some tendency to show that the word "redhibitory" has a recognized standing or position in the Law. It is another straw involving the idea that an action which involves the return of defective property should be considered as redhibitory.

The nature of a redhibitory action is shown in *Childs* v. *Wilson,* 15 La. Ann. 512, where the court said:

"The plaintiff does not sue to avoid the sale, and recover back the notes given for the price; in other words, this is not a redhibitory action; but he sues for the price, without seeking to disturb or annul the contract of sale, under which the horse and mule came into his possession, and under which he executed and delivered his notes to the defendant. This the plaintiff can not do; before he can recover the price, or the notes given for the price, he must sue for and obtain, in the form prescribed by law, the avoidance of the sale."

It is presupposed always that the animal subject to redhibition should be returned if a return can be made. While in the present case there are fifty cows left, and the evidence tended to show that they were sound, the plaintiffs acted on the theory that they were returnable because the herd was bought for a dairy, and attempted to return them. Thus the action they attempted to set up was necessarily redhibitory.

Falcón in vol. 4, page 230, of his work on the Civil Code, says, with respect to redhibition, as follows:

"As the hidden defects which give rise to the warranty have always been called *redhibitory* vices, the warranty obtaining in such cases is similarly named, and likewise the action available to the vendee. The effect of redhibition is that the vendee may elect to rescind the contract or demand a proportional reduction of the price. If he elects the former, the vendee and the vendor must restore

464

to each other, respectively, the thing sold and the price, and in addition thereto, the expenses which the purchaser may have incurred must be reimbursed to him. If he elects the latter remedy, in the absence of a contrary stipulation, experts appointed by both parties will determine the amount of the depreciation occurred in the thing sold by reason of the hidden defects or encumbrances discovered therein.

"* &ast; &ast; &ast; &ast; &ast; &ast;

"When the thing sold is lost on account of the hidden defects, the loss falls on the vendor, who must return the price, and pay the expenses incurred, with damages, if he acted in bad faith.

"* &ast; &ast; &ast; &ast; &ast; &ast;

"The sale of animals is subject to most special rules by reason of the frequency of hidden defects and the greater ease with which they can be concealed. Because of this the rules enacted by the codes are quite special. Some of the codes specify the hidden vices or diseases which are designated as redhibitory and thus give rise to a warranty. Accordingly, they group cattle in various classes. It was so proposed in our project for the Code of 1851, and accomplished by the Austrian and Bavarian codes. The majority merely set forth the general rule, which in the case of some, such as the French Code, has been supplemented by special legislation. This is the system adopted by our own code, and article 1496 thereof had a future law in contemplation when it referred to *vices or defects specified by law.*

"Where several animals are sold together and redhibitory vices are discovered in some of them, the warranty operates only as to the latter; but this rule does not apply where it clearly appears that the vendee would not have purchased all of the animals had he known that some were defective—as in the case of teams of horses or of mules, yoke of oxen, and other animals dealt in pairs.

"In sales of cattle made at fairs or at public markets the warranty against hidden vices does not obtain, except when the animals are suffering from contagious diseases or when the service for which the animals are intended having been stated in the contract, they are found later to be useless therefor."

In his commentaries on the Spanish Civil Code, vol. 4, page 507, Don León Bonel y Sánchez, referring to section 1494 of the Spanish Code (equal to section 1397 of our code), points out that pulmonary consumption is considered as a redhibitory vice in cattle.

In the notes to the French codes edited in 1861, the first redhibitory defect in cattle mentioned is pulmonary tuberculosis.

In the second volume, page 13, of his work *"De la Vente,"* Troplong says: "If the animal is affected with a contagious malady, redhibition takes place." And again: "Outside of contagion, which is a redhibitory vice for all (animals) . . . ," and then the author proceeds to specify other diseases that may be considered redhibitory.

Martínez Ruiz says at page 362 of volume 9 of his commentaries on the Civil Code:

"In all of the articles considered in this commentary mention is made of redhibition, that is, of the vendee's right to rescind the contract. This is not, however, the only right given to him to compensate whatever damages the vices or defects of the animals sold may have caused him. Article 1499 makes extensive to sales of cattle and other animals the provisions of article 1486, under which the vendee may elect—without anything to limit this right of election—to withdraw from the contract, the expenses which he may have incurred being returned to him, or be reimbursed a proportional part of the price, according to the judgment of experts.

"The time within which any of these actions whether for rescission of the sale, or a diminution of the price—must be exercised is not the one provided in article 1490, but that established by the customs of the locality or, in the absence of these, that fixed by article 1496—forty days."

In volume XXVI, page 884, of the *Enciclopedia Jurídica Española,* a redhibitory action is defined as follows:

"An action of the Roman Law available to the vendee in a contract of sale.

"According to a special provision of the aedelician edict, the vendor was responsible for all hidden defects (*morti vitra*) which the thing sold had at the time of the contract, even though they were unknown to him and he was likewise responsible for all the stipulated qualities which the thing should have or should not have (*dicta promissa*). So that when the thing sold had hidden defects or when the *dicta* and *promissa* qualities were not established, the vendee might always elect either to demand the rescission of the

contract or a diminution of the price, both where the defects were capital as well as where they were secondary.

"In the former case the action exercised was the *'actio red-hibitoria'* which prescribed in six months when the vendor had given bond for the defects of the thing sold and in two months when it was otherwise. The redhibitory action could be resorted to only once . . .

"Our private law has substantially adopted the redhibitory action when authorizing the rescission of contracts of sale by reason of defects in the thing sold, under the general Civil Law as well as under the special Commercial Law, and it distinguishes between defects easily detected upon examination by the vendee and hidden defects when fixing the period or time available for the rescission."

We have also before us a work on sales by the Italian commentator, Gasca, translated into Spanish. Commenting on similar provisions of the Italian code, he says:

"The sale is void when the subject matter thereof, which coincides with its objects, is contrary to law or public order. (Article 1122 of the Civil Code).

"It is void because, the things alienated being outside the commerce of man, the vendor would act fraudulently in selling them; also because the sale can not be valid when it constitutes a crime or a violation of law.

"In my opinion the judgments which regard the infections or contagious disease of an animal as a redhibitory vice are defective and wrong. Undoubtedly the absolute nullity of the contract of sale in such cases should not be declared except after it has been proved that the germ of the disease antedated the contract, since the animal could have contracted the disease after the sale. But once such proof is established, whether the vendor acted in good or bad faith, the sale should not be avoided only by reason of the exercise of the redhibitory action, but it should be adjudged null and void for lack of the thing which according to law may be the object of the sale." (Page 357.)

And possibly more to the same effect. The author, however, cites three decisions of courts of cassation of Italy which do not agree with him. And he himself does not give the reasons for his conclusion.

For our purposes it would be well to transcribe the whole chapter on warranty for hidden defects:

"Sec. 1387.—The vendor is bound to give a warranty against hidden defects which the·thing sold may have should they render it unfit for the use to which it was destined, or if they should diminish said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it; but said vendor shall not be liable for the patent defects or those which may be visible, neither for those which are not visible if the vendee should be an expert and who by reason of his trade or profession should easily perceive them.

"Sec. 1388.—The vendor is liable to the vendee for the warranty against faults or hidden defects in the things sold, even when they should be unknown to him.

"This provision shall not obtain if the contrary should have been stipulated and the vendor should not have been aware of said faults or hidden defects.

"Sec. 1389.—In the cases of the two preceding sections the vendee may choose between withdrawing from the contract, the expenses which he may have incurred being returned to him, or demanding a proportional reduction of the price, according to the judgment of experts.

"If the vendor knew of the faults or hidden defects in the thing sold and did not give notice thereof to the vendee, the latter shall have the same option, and, furthermore, be indemnified for the losses and damages should he choose the rescission.

"Sec. 1390.—If the thing sold should be lost on account of hidden faults and the vendor was aware of them, he shall bear the loss, and return the price and pay the expenses of the contract, with losses and damages. If he was not aware thereof, he shall only return the price and pay the expenses of the contract which the vendee may have paid.

"Sec. 1391.—If the thing sold had any hidden fault at the time of the sale, and should be lost afterwards by a fortuitous event or by fault of the vendee, the latter may demand of the vendor the price he paid, deducting the value the thing had when lost.

"If the vendor acted in bad faith, he must pay losses and damages to the vendee.

"Sec. 1392.—There shall be no liability for losses and damages in judicial sales, but all the other provisions of the preceding section shall be applied.

"Sec. 1393.—Actions arising from the provisions of the five preceding sections shall be extinguished after six months, counted from the delivery of the thing sold.

"Sec. 1394.—If two or more animals should be sold together, whether it be for a lump sum or for a special price for each of them, the redhibitory vice of each one shall only cause the redhibition of the same and not that of the others, unless it appears that the vendee would not have purchased the sound one or ones without the defective animal.

"This is presumed when a team, yoke, pair, or set is bought, even when a special price has been fixed for each one of the animals composing the same.

"Sec. 1395.—The provisions of the preceding section, with regard to the sale of animals, is understood as applicable also to the sale of other things.

"Sec. 1396.—Warranty for the hidden vices of animals and cattle shall not obtain in sales made at fairs or at public auctions, nor in the sale of riding beasts, sold as condemned, except in the case prescribed in the following section.

"Sec. 1397.—Animals and cattle suffering from contagious diseases shall not be the object of a contract of sale. Any contract made with regard to the same shall be void.

"A contract of sale of cattle and animals shall also be void, when the use or services for which they are acquired being stated, they are found to be useless therefor.

Sec. 1398.—If the hidden vice of animals, even if a professional inspection has been made, should be of such a nature that the knowledge of experts is not sufficient to discover it, it shall be considered as redhibitory.

"But if the veterinarian, through ignorance or bad faith, should fail to discover or to give notice of it, he shall be liable for losses and damages.

"Sec. 1399.—The redhibitory action, based on the vices or defects of animals, must be instituted within forty days, counted from their delivery to the vendee, unless, by reason of the customs in each locality, longer or shorter periods are established.

"This action in the sale of animals may only be enforced with regard to the vices and defects of the same, determined by law or by local customs.

"Sec. 1400.—If the animal should die within three days after being bought the vendor shall be liable, provided the disease that caused the death, in the judgment of veterinarians, existed before the contract.

"Sec. 1401.—If the sale has been rescinded the animal must be returned in the condition in which it was sold and delivered, the vendee being liable for any injury due to his negligence and which does not arise from the redhibitory vice or defect.

"Sec. 1402.—In the sale of animals and cattle with redhibitory vices the vendee shall enjoy the privilege mentioned in section 1389; but he must make use thereof within the same period which has been respectively fixed for the exercise of the redhibitory action."

As will be seen, section 1393 fixes a period of six months for the prescription of ordinary warranties. Section 1399, however, requires that a redhibitory action for vices or defects in animals should be brought within forty days. This is a universal provision which necessarily applies to redhibitory vices, whether in the nature of a contagious disease or not.

It is almost unimaginable that the purchaser of a cow should have the right to rescind or annul the sale for one, two, three, or more years after taking possession of the animal. It is inconceivable that a man might milk the cow for two or three years, be perfectly satisfied with it, and then return it because it had tuberculosis. Scaevola says that he can not conceive that by reason of a contagious disease the limitation should be changed from forty days to four years. 23 Scaevola, page 666. In other words, he had the idea that even for contagious diseases prescription should run, that is to say, that at some time the action would prescribe. It may not be held, as maintained by the appellees, that there was never any period of prescription in the case. If the action could prescribe in four years, there is no reason why the Legislature should not fix forty days in cases of contagious diseases. This for us is the principal point in the case.

What the legislature in Spain had in mind probably was that a contagious disease would manifest itself within forty days. No particular attention was given to the thought that a longer time might perhaps be necessary where tuberculosis was concerned. In any event the statute fixed forty days

unless the local usages required a different period. *Ad ea quae frequentius accidunt jura adaptantur.* So much was this so that at the time of the preparation of the proposed bill of 1851 the veterinary experts thought that fifteen days was a reasonable time within which to bring a redhibitory action on account of bovine tuberculosis.

Referring to the defective legislation we are now considering, Scaevola says:

"This subject of the sale of animals has been brought into the Code in fragments, which form a veritable juridical crazy-quilt, made up of all sorts of materials and hues. The contrast exhibited by the provisions as against each other is as striking as it is queer; the deficiencies noted are as numerous as they are regrettable, and were it not for the fact, that, in reality, notwithstanding their divers origin and the independence with which they clothe themselves, they all respond essentially to very well-known and old principles which are identified through them, it would be practically impossible at times to ascertain the intention of the legislator.

"The two articles which we have before us (corresponding to articles 1396 and 1397 of the Civil Code of Puerto Rico) are good proof of these conclusions, for, looking at their phraseology only, they appear to seek entirely different purposes, whereas essentially they are perfectly consistent. As regards the legal terms they use and the accuracy of their provisions, they are likewise objetionable. Thanks to the good fortune that these articles apply to causes, which are generally of small import and can be determined in oral trials ('juicio verbal'), the consequences will not be very serious. Otherwise, both these articles and all which follow in the same section would render themselves famous in the annals of judicial administration." (Id., page 655).

This crazy-quilt (*edredón*) as Scaevola characterized it, has impelled us to make a wider examination of the authorities than is ordinarily necessary.

Up to 1889, when the Spanish Civil Code was passed, it may be noted that the time in which a redhibitory action should be brought was a limited one: from time immemorial a period of not more than six months. If by section 1397, to take the extreme case, the legislator thought that the exist-

ence of a contagious disease would render a contract for the sale of cattle nonexistent, did the legislator show any intention of preventing such an action from ever prescribing? As some of the commentators say, it seems inconceivable that the intention was to prevent such an action from prescribing or relegate the prescription to the term of four years determined by the chapter on the nullity of actions, or to the period of fifteen years provided in the code for the limitation of actions when no term is otherwise provided. As the prescription of forty days was first introduced into the code along with the reformed precept of section 1397 (1494 of the Spanish code), the strong probability is that the legislator thought that a shorter period than formerly was advisable. We have elsewhere made the comment that the Spanish legislator probably did not have tuberculosis in mind. The only way to harmonize the whole matter is to conclude that the legislature continued to think that the obligation incurred by a vendor of cattle with a contagious disease was responsive to a redhibitory claim that the purchaser had, and the legislature also had in mind that the period of prescription for all redhibitory actions, including those involving animals affected with contagious diseases, should be short. For other occult vices in sale of property the prescriptive period of six months prevails. The way to harmonize the whole chapter is to declare that the legislature was fixing different periods of prescription for every occult vice enumerated therein; in other words, a period of six months for ordinary vices and a period of forty days when animals were involved. It may even be that the legislature had in mind contagious diseases in animals when it fixed the prescription of forty days, inasmuch as most diseases of that nature would come to light before that time.

The introduction in 1889 of a period of prescription of forty days and the enactment of section 1397 at the same time would be a strange coincidence, if they had no relation to each other.

We shall not give a great amount of attention to the contention that the complaint failed to state a cause of action. What the appellant apparently maintains is that, as a part of the cattle, some fifty or more in number was not shown to be diseased, the theory of the action could not prevail or at least could not prevail for the cattle not shown to be unsound.

We think that the demurrer lay. If the court below and the appellees were right that the whole sale as an entirety was annullable because of contagious diseases in a majority of the animals, then, of course, the complaint was good. We have the idea that when cattle are sold, even for a dairy, the animals are sold individually. It is a distributive sale. It makes no difference that the sale was for a lump sum. With the exceptions noted in the chapter, only the cattle affected with a redhibitory vice, under all the codes and the commentators that we have seen, may be returned. Our notion of a dairy is that cattle are continually being bought and sold for its purposes, and the complaint does not allege that the business of a dairy could not commence or proceed by reason of occult vices in the animals or that if animals died they could not be replaced. As we see it, as soon as one cow died another could be purchased or the business go on without any new acquisition. Furthermore, the complaint does not distinctly set forth that the cattle were to be used for a dairy. Besides, whenever cows are bought in bulk in the majority of cases they are bought for a dairy or for similar purposes.

Likewise we think that given the attitude of the appellees in basing their action exclusively on section 1397 of the Civil Code, the motion to strike presented by the defendant ought to have prevailed in certain particulars. For example, all matters which related to the knowledge or lack of knowledge of the plaintiffs when purchasing the cows. That knowledge was totally unimportant under section 1397. On the other hand, the appellant also moved to strike from the complaint what was said with regard to an offer by the plaintiffs to return the remaining cows. The averment was important, it

seems to us, for the proper purposes of the defendant in attempting to show that the action was redhibitory and had prescribed.

In view of the fact that the judgment must be reversed in any event, we shall give no further attention to the motion to strike.

For similar reasons, although the complaint might be considered unintelligible and ambiguous in certain respects, we shall not discuss the matter.

Coming then to the trial of the case, our final conclusion is that from the evidence the court had a right to find that a great number of the cows sold were affected by tuberculosis at the time of the sale. Independently of the statements of the witnesses or of the principal witness, Alonso, the preponderance of the evidence satisfies us that the disease was not contracted after the sale, at least with respect to a number of the cows. Existing, as it did, in some cases in advanced form the court had a right to decide the facts as it did.

We shall not give great heed to the moral questions involved. Presuming, as we must, the good faith of both parties, the position of either of them was hard. If, for example, some of the cattle had tuberculosis which would make no progress, technically the purchaser had a right to rescind the sale within forty days. For him, however, it would be exceedingly hard that the cattle should die in his hands after two or three months of use on account of tuberculosis. Similarly would be the position of the defendant.

In short, our examination of the statutes and the jurisprudence convinces us that the action brought in this case could only be good if brought in time, to recover for the animals actually affected by tuberculosis. The defendant had a clear right to insist that the contract was good for the cattle that were sound. This brings us to another doubt. If part of the cattle was in good health and hence there was some consideration for the contract, it might be maintained that the contract existed and that the plaintiffs were only entitled to sue for a partial failure of consideration.

Let us suppose the payment of price for certain lands. It turns out that the vendor did not have title to one of the pieces. We think it is evident that the whole contract frequently, if not ordinarily, could not be rescinded or annulled.

Before concluding this opinion we desire to say, and this appears possibly from our general considerations, that the plaintiffs never had the right to the cancellation of the whole contract, but only to bring a redhibitory action for the animals that were suffering from or died of a contagious disease.

Principally because the cause of action prescribed, and perhaps for other reasons, the judgment should be reversed and the complaint dismissed.

### ON MOTION FOR REHEARING

#### June 8, 1934

MR. JUSTICE WOLF delivered the opinion of the court.

In writing our original opinion we never lost from view the fact that the firm of Alonso Hermanos was maintaining that a sale of animals that were affected by a contagious disease was entirely null, void, and inexistent.

In part the theory of the opinion, taking the whole history of contracts for the sale of animals, was that section 1397 of the Civil Code ought to be understood as giving a right to annul rather than making the contract absolutely void. This was the rule from time immemorial in Spain, and the intention of the Legislature to change it should appear clearly. As we pointed out in our opinion, the situation of the vendor should be considered as well as the situation of the purchaser, and such an interpretation should be put upon the law that would respect the rights of both parties. We also arrived at the conclusion that the somewhat inconsistent statements of the commentators did not affect our right to determine for ourselves the interpretation to be given to a section of the code which was intercalated in a chapter relating to warranty for hidden defects in animals.

Assuming, however, with the proponents of the motion for reconsideration, that the sale of the animals shown to be affected with a contagious disease was entirely inexistent, nevertheless, we think that the terms of section 1399 of the Civil Code should prevail. From time immemorial the action accruing to the purchaser of animals affected with a contagious disease was a redhibitory one. The fact, therefore, that the code perhaps made such a sale inexistent did not affect the total theory of the chapter. The essential idea of our code and of other codes was that a purchaser who had a right to annul a sale of diseased animals should begin his action within a certain limited time, in this case 40 days. It makes no difference, from our standpoint, whether the action should be styled one of nullity, or of rescission, or of inexistence, or any other action arising in practice. As we pointed out, the time for filing a redhibitory action used to be at least six months, but the legislature of Spain, if its theory was that the sale was entirely null and void, was seeking to give the vendor some protection, and that was the possible reason why the term of 40 days was fixed. It could never have been the intention of the Spanish legislature that a sale in good faith of diseased animals should be annullable for all time or even for the four year period which ordinarily applies to actions for nullity.

The proponents of the motion now draw our attention to the provisions of the law making a vendor of diseased animals subject to a criminal prosecution. The answer to this suggestion is that the law only covers the sale of animals knowing them to be contaminated with a contagious disease. The Puerto Rican Legislature thought that such an act was criminal and so declared, but the fact that it is declared to be criminal does not necessarily affect the rights between parties, especially where there is no bad faith. The idea of the Spanish legislature, and it is our own, was *Interest reipublicae ut sit finis litium*.

The motion will be denied.